THE STATE OF NEVADA, on Relation of Its Department of Highways, Appellant, v. MARY LoBUE, Respondent.

No. 5228

May 18, 1967 427 P.2d 639

[Rehearing denied June 29, 1967]

*Harvey Dickerson,* Attorney General, Carson City, and *Melvin L. Beauchamp,* Deputy Attorney General, for Appellant.

*Foley Brothers,* of Las Vegas, and *Cooper and Nelsen* of Los Angeles, California, for Respondent.

**OPINION**

By the Court, THOMPSON, C. J.:

This is a condemnation case commenced by the State against Mary LoBue to acquire two separate parcels of land (5.19 acres) in Clark County for interstate highway purposes. Sometime before trial the parties, through counsel, stipualted that the ownership of another parcel of land (3.80 acres) to which the State held record title adverse to LoBue's claim of ownership, could be decided by the Court in this litigation.[1] It was understood that if the court found for LoBue the scope of the condemnation case would be enlarged to embrace all of the land, that is 8.99 acres, and the cause then tried to a jury to find just compensation and assess severance damages. On the other hand, should the court rule for the State, the disputed parcel would not be included in the condemnation jury trial. The case thus became a bifurcated affair—the first dispute, an equitable proceeding, to be resolved by the court; and the second, the condemnation case, to be decided by a jury.

The district court ruled that LoBue was the owner of the disputed land, and, in effect, cancelled the deeds through which the State had acquired title. Consequently all three parcels totalling 8.99 acres were included in the jury trial which followed. The jury awarded LoBue $548,525 as just compensation for the property taken; $108,205 severance damages; and found that the remainder of some of her property was benefited by the highway to the extent of $5,000. A judgment for $651,730 with interest then accrued of $127,567.40 was duly entered. This appeal by the State ensued.

The main claim of error is addressed to the court's finding that LoBue was the owner of the disputed acreage to which the State held record title. Since the jury returned a lump sum

---

[1]On March 4, 1957 LoBue, by grant deed, had conveyed the disputed acreage to Clark County. On September 6, 1962 the County, by quitclaim deed, conveyed its title to the State. The stipulation provided, inter alia, that Clark County need not be joined as a party to the litigation and that LoBue could assert against the State all rights and remedies that she may have had against Clark County.

verdict for all of the property condemned ($548,525) without assessing compensation for each parcel separately, and as the failure to segregate by parcel likewise affects the lump sum severance damages awarded, this assigned error, if sustained, requires a reversal of the entire case. It is our opinion that the ruling below vesting ownership of the disputed parcel in LoBue, thus subjecting that parcel to the condemnation suit, was clearly erroneous. Therefore, we reverse and remand for another trial to determine just compensation, severance damages, and benefits, if any, due to the State's condemnation of the two parcels totalling 5.19 acres. The disputed parcel (3.80 acres) is removed from this litigation and the State's title thereto confirmed.

On March 4, 1957 LoBue, by grant deed, conveyed the disputed parcel (3.80 acres) to Clark County. The County Commissioners, by resolution, accepted the conveyance unconditionally and recorded the deed. On September 6, 1962 Clark County conveyed its title to the State. The trial court made the following relevant findings: That LoBue was induced to execute the deed to the County because of representations by authorized agents of the County that her remaining property would be benefited by having 2900 feet of additional frontage along the roads to be constructed by the County; that the representations were sincerely and innocently made by the County agents in the belief that they would be fulfilled; that the County did not build the roads; that the consideration for the conveyance failed; and that LoBue, as grantor, did not intend a gift or a dedication of the land for public use. As we read the record each finding is supported by substantial evidence.

We turn first to examine the grant deed. It is unconditional in form. The words used are: "* * * the undersigned grantor does hereby grant, bargain, sell and convey to Clark County, Nevada, for street and road purposes, all of the following described land * * *." Those words do not provide for termination of the estate conveyed upon the occurrence or non-occurrence of a specified event. It is well settled that a mere statement of the use to which the land conveyed is to be devoted, and in consideration of which the conveyance is made, does not subject the estate transferred to a condition subsequent. I Rest. Prop. Sec. 45, p. 143; 3 Powell, Real Property, p. 143; Greene v. O'Connor, 25 A. 692 (R.I. 1892); Fuchs v. Reorganized School Dist., 251 S.W.2d 677 (Mo. 1952); Gramer v. City of Sacramento, 41 P.2d 543 (Cal. 1935);

Booth v. Los Angeles County, 12 P.2d 72 (Cal.App. 1932); See also NRS 111.170 [where it is provided that the words "grant, bargain and sell" are used to convey an estate in fee simple unless restrained by express terms contained in the deed]. Additionally, we note that the deed does not provide for reverter to or re-entry by the grantor.

The acceptance of the deed by the County was likewise unconditional. [Cf. State ex rel. Dep't of Hwys. v. Wells Cargo Inc., 82 Nev. 82, 411 P.2d 120 (1966) where Clark County accepted a grant deed from Wells subject to a condition—the right of Wells to encroach upon the property conveyed where Wells' weighing installations were located—and the Court held that Wells had retained an easement which was compensable in an eminent domain proceeding.] Thus, an absolute, unconditional transfer of title occurred when LoBue made and delivered her grant deed to Clark County.

The consideration for that conveyance failed. Clark County did not construct the roads. That failure, however, was not accompanied by fraud or bad faith on the part of the County. The County acted in good faith in making its representations. Apparently it did not complete the road project because the State's proposed highway plan rendered the County project unnecessary.

The State's claim of error centers on the proposition that failure of consideration for an unconditional grant deed, without more, does not justify equitable relief. Fraud in the inception of the transaction, or some kindred circumstance, must exist before recission or cancellation is in order. Abundant case authority sustains this contention. Desert Centers, Inc. v. Glen Canyon, Inc., 356 P.2d 286 (Utah 1960); Williams v. Sullivan, 138 S.E.2d 368 (Ga. 1964); City of Cleveland v. Herron, 131 N.E. 489 (Ohio 1921); Suburban Properties, Inc. v. Hanson, 382 P.2d 90 (Ore. 1963); Hewett v. Dole, 124 P. 374 (Wash. 1912); Miller v. Village of Brookville, 89 N.E.2d 85 (Ohio 1949); Lawrence v. Gayetty, 20 P. 382 (Cal. 1889); Borden v. Boyvin, 130 P.2d 718 (Cal.App. 1942); Norby v. Pister, 250 P.2d 633 (Cal.App. 1952). The grantor's remedy when the bargained for consideration fails and a reason for equitable relief is not present, is an action at law for damages.

LoBue acknowledges the law as we have stated it but insists that Nevada has adopted a different rule; that failure of consideration, without more, will, in this State, allow equity to

intervene and cancel a deed. Kerr v. Church, 74 Nev. 264, 329 P.2d 277 (1958). Though it is true that in Kerr this court affirmed a decree cancelling a deed upon the ground that the consideration therefor failed, we think that case properly falls within a well established exception to the rule we have just related. The prevailing view in this country favors the recission of a deed if the grantee fails to perform his promise to support the grantor. The essence of Kerr was the failure of the grantee to allow the grantor, during his lifetime, to jointly use the home which was the subject of the deed. Clearly this was a form of support. The rationale underlying the "support exception" varies: inadequacy of the legal remedy (Ford v. Ford, 43 N.E.2d 756 (Ohio 1942)); theory of a breach of a condition subsequent (Nadler v. Nadler, 8 N.W.2d 306 (Wis. 1943)); the failure to support raises a presumption of fraud at the inception of the transaction (DaCosta v. Bischer, 122 N.E. 819 (Ill. 1919)); (Sethmann v. Bulkley, 61 P.2d 765 (Cal. 1936)); and, the mere failure of consideration (Martinez v. Martinez, 141 P. 469 (Colo. 1914)). Whatever the reason assigned, it is clear that a conveyance in consideration of a promise to support the grantor is treated differently than an ordinary commercial transaction. Comment: 9 U.Pitt.L.Rev. 206 (1948); annot. 112 A.L.R. 670.

In addition to the Kerr case our attention is directed to the decision of Russell v. Ruffcorn, 54 Nev. 162, 10 P.2d 632 (1932) where, on appeal, the court directed cancellation of a deed because the consideration therefor failed. In that case, however, the parties had also executed a contract which provided that the deed was to be accepted as part payment for stock held in escrow pursuant to a conditional permit of the Commissioner of Corporations of California under which the stock was not to be sold without the written consent of the Commissioner. His consent was not secured, though both parties to the agreement, at the time it was entered into, apparently believed that no difficulty would be experienced in obtaining the Commissioner's consent—a mutual mistake. That circumstance, coupled with the failure of consideration, led the court to decree equitable relief. Such additional factors are not present in the case at hand.

We conclude that, in these circumstances, the grantor's (LoBue) remedy for the failure of Clark County to construct the roads is an action at law for damages; not a suit in equity to cancel the deed. The reason for withholding equitable relief is the need for preserving the finality of a deed and the integrity of title to real property. This can best be accomplished by

limiting the grantor to the remedy of damages. We express no opinion on the point of damages. Perhaps the highway construction by the State along the disputed parcel benefited LoBue as much as the originally planned County roads; perhaps not. That question was not presented to the trial court for decision.

For the reasons expressed the judgment below is reversed and the cause remanded.

COLLINS, J., concurs.

ZENOFF, J., concurring:

The peculiar circumstances surrounding the execution of the grant deed for road purposes captured more than my usual interest because I was the trial judge in State ex rel. Dep't of Hwys. v. Wells Cargo, Inc., 82 Nev. 82, 411 P.2d 120 (1966). Initially, I did not see the distinction between the subject of the deed in this case from the execution of the deed to the county in the Wells case. It seems clear now that Mr. Justice Badt found that in Wells the trial judge was correct in his conclusion, though not in the way in which he arrived at it.

In this case, LoBue gave the deed for street and road purposes in return for a promise that a road would be constructed along the remainder of the property. An interstate highway was built on the property, though not by the promising party and not to the same specifications as originally promised. Yet, not only was the promise kept but the road is a much more travelled artery as an interstate highway than as a county road. It is reasonably probable that respondent received even more than bargained for.